JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| BILL TAYLOR,<br><br>    Plaintiff,<br><br>    vs.<br><br>COXCOM, INC., COXCOM, LLC,<br>COX COMMUNICATIONS, INC. AND<br>DOES 1 through 50 inclusive,<br><br>    Defendants. | Case No.: CV 12-10149-CJC(JPRx)<br><br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION TO REMAND |

## I. INTRODUCTION AND BACKGROUND

Plaintiff Bill Taylor ("Plaintiff") filed this putative class action on October 23, 2012 in Santa Barbara County Superior Court. Plaintiff alleges that he is a former hourly employee of CoxCom, Inc., CoxCom, LLC, and Cox Communications, Inc. (collectively,

"Defendants").[1] He seeks to represent a class of current and former hourly employees who worked for Defendants within the four years preceding the filing of the complaint and who held the title of Field Service Technician, Field Service Representative, Universal Home Technician In-Training, or Universal Home Technician and whose duties included cable/internet service and/or installation for Defendants' customers. (Dkt No. 9, Attach. 2 [Glugoski Decl.] Exh. 2 [First Amended Complaint ("FAC")] ¶ 10.) He alleges that Defendants violated the California Labor Code ("Labor Code") and California Business and Professions Code and asserts five causes of action: (1) failure to provide meal period breaks and accurate wage statements pursuant to IWC wage orders and Labor Code sections 226, 226.7, and 512; (2) failure to provide rest period breaks and accurate wage statements pursuant to IWC wage orders and Labor Code sections 226 and 226.7; (3) failure to pay minimum wage in violation of Labor Code sections 1194, 1194.2, and 1197; (4) failure to make payment within the required time pursuant to Labor Code sections 201, 202, and 203; and, (5) unlawful, unfair, and fraudulent business practices pursuant to Business and Professions Code section 17200, *et seq*. Defendants removed the action pursuant to the Class Action Fairness Act of 2005 ("CAFA") on November 28, 2012. (Dkt. No. 1 [Notice of Removal] at 2.) Defendants contend that minimal diversity exists and that the amount in controversy exceeds $5 million. (*Id.* at 2–3.)

Before the Court is Plaintiff's motion to remand the action to Santa Barbara Superior Court. Plaintiff argues that the $5 million CAFA amount in controversy requirement is not met because the FAC explicitly states:

> The claims of the individual class members, including Plaintiff, are under the $75,000 jurisdictional threshold for federal court. For example, a class

---

[1] Cox Communications California, LLC states that it was erroneously sued as CoxCom, Inc. and CoxCom, LLC.

> member who was or has been employed for a relatively brief period would never reasonably be expected to receive a recovery of $75,000 or more. The total amount in controversy for the entire case does not exceed $5,000,000.

(FAC ¶ 1.) Defendants contend that removal was proper because they have shown by preponderance of the evidence, and to a legal certainty, that the amount in controversy is well over the jurisdictional threshold. By Defendants' calculations, the amount in controversy is at least $25 million. (Notice of Removal.) For the reasons stated below, Plaintiff's motion to remand is **GRANTED**. Defendants' pending motion to dismiss is **DENIED AS MOOT**.[2]

## II. ANALYSIS

### A. LEGAL STANDARD

A civil action brought in a state court but over which a federal court may exercise original jurisdiction may be removed by the defendant to a federal district court. 28 U.S.C. § 1441(a). CAFA provides federal jurisdiction over class actions in which the amount in controversy exceeds $5 million, there is minimal diversity between the parties, and the number of proposed class members is at least 100.[3] 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B). The removal statute is "strictly construe[d] . . . against removal jurisdiction. Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)

---

[2] Having read and considered the papers presented by the Plaintiff, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearings set for February 4, 2013 at 1:30 p.m. are hereby vacated and off calendar.
[3] Here, only the amount in controversy is at issue.

(internal citations omitted). A district court must remand the case to state court if it appears at any time before final judgment that the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c).

### B. REMOVING PARTY'S BURDEN OF PROOF

The Court first addresses the burden of proof as the parties disagree over which standard applies.[4] This Circuit has identified three burdens of proof placed on removing defendants, two of which are relevant here. First, where it is "unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," a preponderance of the evidence standard applies. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). Second, where "the plaintiff has pled an amount in controversy less than $5,000,000, the party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met." *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007). Plaintiff argues that the *Lowdermilk* "legal certainty" standard applies because the FAC explicitly states under a subheading entitled "Parties, Jurisdiction, and Venue" that "[t]he total amount in controversy for the entire case does not exceed $5,000,000." Defendants contend that the preponderance of the evidence standard applies because Plaintiff does not allege the amount in controversy in good faith and the FAC's jurisdictional limitation is not repeated in the prayer.

///

///

---

[4] As a relevant preliminary matter, the Court notes that Defendants removed a non-operative complaint. Plaintiff filed his FAC in state court on November 27, 2012, and Defendants removed the case on the basis of the original complaint on November 28, 2012. The complaint and FAC are not identical, as the Complaint states that "damages" do not exceed $5 million while the FAC states that "the amount in controversy" does not exceed $5 million. While the Court could grant Plaintiff's motion on this basis alone, it undertakes a substantive analysis given the similarity of the pleadings.

Contrary to Defendants' contentions, there is no ambiguity that the FAC specifically pleads an amount in controversy that does not exceed $5,000,000. The "amount in controversy" allegation explicitly refers to "the entire case," which is reasonably interpreted to include all forms of relief. The cases cited by Defendants are inapposite. In *Guglielmino*, the plaintiffs alleged in the jurisdiction and venue section of their complaint that the "damages" to each plaintiff were below the jurisdictional minimum. In their prayer for relief, the plaintiffs did not mention a dollar amount but sought monetary relief such as attorneys' fees and other amounts that "do not fall comfortably within the realm of 'damages' ", creating uncertainty as to the specific total amount in controversy. 506 F.3d at 700–01. Similarly, the courts in *Trahan v. U.S. Bank Nat'l Ass'n,* No. C 09-03111 JSW, 2009 WL 4510140 (N.D. Cal. Nov. 30, 2009), and *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM JCX, 2011 WL 1790123 (C.D. Cal. May 9, 2011), applied the preponderance of the evidence standard where the plaintiffs asserted that the "aggregate damages" and "damages," not the total amount in controversy, were under the jurisdictional limit. *Lyon v. W.W. Grainger Inc.* did not address jurisdiction under CAFA and there was ambiguity because the prayer included requested relief not factored into the plaintiff's amount in controversy determination. No. C 10-00884 WHA, 2010 WL 1753194 (N.D. Cal. Apr. 29, 2010).

Here, Plaintiff's jurisdictional statement is not limited to damages, but avers that the amount of controversy for the entire case falls below the CAFA jurisdictional minimum. Accordingly, this case more closely resembles *Lowdermilk* than *Guglielmino*. As the court in *Ray* pointed out, "[t]he key distinction . . . between *Guglielmino* and *Lowdermilk* was that the plaintiffs in *Guglielmino* did not mention the total amount in controversy." 2011 WL 1790123, at *3. It is true that Plaintiff does not repeat his amount in controversy allegation in his prayer for relief, but nothing in the prayer contradicts the alleged amount in controversy and no ambiguity is created because of this omission. *See Fletcher v. Toro Co.*, No. 08-cv-2275 DMS (WMc), 2009 U.S. Dist.

LEXIS 126693, at *14 (S.D. Cal. Feb. 3, 2009) (noting that "the failure to include the allegation in the prayer for relief, standing alone, is not dispositive" and applying *Lowdermilk* standard where amount in controversy was alleged in jurisdiction section of complaint only).

Defendants also maintain that the preponderance of the evidence standard applies because Plaintiff has acted in bad faith. "Bad faith would alter the applicable standard of review where a Plaintiff pleads in such a way as to avoid federal jurisdiction, but does so knowing that the claims made actually seek an amount above the jurisdictional threshold." *Bonnel v. Best Buy Stores, L.P.*, No. C-12-2285 EMC, 2012 WL 3195081, at *4 (N.D. Cal. Aug. 7, 2012). In the CAFA context, good faith "is entwined with the 'legal certainty' test," *Morgan v. Gay*, 471 F.3d 469, 474 (3d Cir. 2006), and a "defendant must generally show bad faith in pleading by proving that plaintiff is actually pleading more than $5 million, essentially collapsing the inquiries of bad faith and the amount in controversy," *Bonnel,* 2012 WL 3195081, at *4. Defendants argue that Plaintiff, who seeks to represent a class of approximately 600 people, has very little information about the class and that the total damages could far exceed $5 million. Defendants' allegations are insufficient to establish bad faith. As discussed in detail below, Defendants have not established to a legal certainty that Plaintiff is actually pleading more than $5 million. Further, Plaintiff argues that he pleaded the amount in controversy based on counsel's "extensive experience" in wage and hour cases. (Pl.'s Reply at 17; *see also* Glugoski Decl. ¶¶ 2–5.) Plaintiff is the master of his complaint and it is a "plaintiff's prerogative, subject to the good faith requirement, to forgo a potentially larger recovery to remain in state court." *Lowdermilk*, 479 F.3d at 999. Defendants must prove with legal certainty that CAFA's jurisdictional amount is met.

///

## C. AMOUNT IN CONTROVERSY

"The 'legal certainty' standard sets a high bar for the party seeking removal, but it is not insurmountable." *Lowdermilk*, 479 F.3d at 1000.  A court may consider facts in the notice of removal in addition to "summary-judgement-type evidence relevant to the amount in controversy at the time of removal," *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (internal quotes and citation omitted), and "supplemental evidence later proffered by the removing defendant, which was not originally included in the removal notice," *Fletcher*, 2009 U.S. Dist. LEXIS 126693, at *8.

The evidence provided by Defendants in support of their calculations is limited. Defendants have provided evidence that over 600 individuals worked in the covered positions sometime during the class period, (Irwin Decl. ¶ 3), and that 138 separated from employment with Defendants, (*id.* ¶ 4).  The average hourly rate for the 600 covered individuals was $25.40, (*id*. ¶ 3), while the average hourly rate during the three years preceding the filing of the suit was $26.12, (*id.* ¶ 4).  But Defendants also rely upon speculation for which they provide *no* evidence in reaching their calculations, or in some instances, assumptions that contradict the evidence they do provide.

Defendants estimate that the total amount of possible damages concerning meal periods and rest breaks is approximately $24 million.  Defendants provide the following calculation:

> Based upon the field technicians' approximate average hourly rate ($25.00) and the approximate number of shifts they worked during the relevant time period (they typically work 4 shifts per week), the approximate potential exposure for just Plaintiff's meal period and rest break class claims is approximately than [sic] $24,000,000 in total (($25.00 x 4 x 200 [50 weeks x

> 4 years] x 600) x 2), which would represent the potential meal and rest break exposure if Plaintiff proved the allegations in the Complaint to the maximum extent on a class-wide basis at trial.

(Notice of Removal at 5–6.)  In this calculation, Defendants assume that all 600 class members worked for the entire class period.  This is contradicted by Defendants' own evidence, which demonstrates that Plaintiff left his employment in May 2012, approximately five months before the end of the class period.  (Irwin Decl. ¶ 6.)  Further, Defendants present evidence that 138 of the 600 individuals separated from employment with Defendants.  (*Id.* ¶ 5.)  Despite that Susan Irwin, Cox Communication, Inc.'s Director of HR Technology, reviewed payroll records to determine the dates of separation, (*id.*), such information is not provided to the Court or incorporated into Defendants' calculations, which presume that all 600 individuals were employed for the entire class period.  Defendants also provide no evidence for the assumption that class members worked four shifts per week or fifty weeks per year.

Defendants take similar liberties in calculating waiting time penalties.  Labor Code section 203 provides that if an employer willfully fails to pay wages to a terminated employee, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  Defendants calculate penalties as follows:

> Since October 23, 2009, Cox California has employed approximately 140 field technicians who have ended their employment with Cox California.  Based upon these individuals [sic] approximate average hourly rate ($26.00), the amount in controversy with respect to Plaintiff's waiting time penalty claim is approximately $1,092,000 ($26.00 x 10 x 30 x 140).

(Notice of Removal at 6.) In determining this amount, Defendants assume that the field technicians worked 10 hour days. They provide no evidence in support of this assertion in either of the two declarations provided in support of removal.

Further, with respect to unpaid hours, Defendants' Notice of Removal states "[a]lthough Plaintiff does not specify in the Complaint how much time he (or the putative class members) spend working 'off-the-clock,' it is reasonable to conclude that such damages would increase the potential exposure by more than $1 million." Defendants provide no basis for this statement. (Notice of Removal at 7.) While the Court understands that Defendants lack complete information concerning Plaintiff's claims for unpaid work, the Court without more cannot accept Defendants' conclusion that such an amount is "reasonable." Finally, Defendants argue that attorneys' fees are "likely to be hundreds of thousands of dollars," but provide no evidentiary support for this assertion. *See Riddoch v. McCormick & Schmicks Seafood Rests., Inc.*, No. CV 09-07127 ODW (MANx), 2010 U.S. Dist. LEXIS 65799, at *12 (C.D. Cal. June 28, 2010) ("[T]he extent of damages has not been established with any certainty, and thus, any estimate of attorney's fees (which would be based, at least in part, on the amount of damages), would be purely speculative."). Defendants need not prove Plaintiff's case nor calculate the specific amount of damages due to each potential class member, but they must do more than estimate amounts based on arbitrary numbers with little explanation and no factual support. The Court cannot "base [its] jurisdiction on Defendant[s'] speculation and conjecture." *Lowdermilk*, 479 F.3d at 1002.

///
///
///
///

## III.  CONCLUSION

For the reasons stated above, Plaintiff's motion is **GRANTED**.  This action is **REMANDED** to Superior Court of California, County of Santa Barbara.  Defendants' pending motion to dismiss is accordingly **DENIED AS MOOT**.

DATED:     January 29, 2013

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE